NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

AMELIO IANNUCCI, BY HIS NEXT FRIEND, DOMINICK IANNUCCI, HIS FATHER, PETITIONER, v. PUBLIC SERVICE ELECTRIC AND GAS COMPANY, RESPONDENT.

\* \* \* \* \* \* \*

And it appearing that on September 3d, 1926, Amelio Iannucci, while employed by the respondent, met with an

accident which was of such a character that he was struck on the head and rendered unconscious. Immediately following this accident the petitioner was disabled so that he was not able to resume work and has not been able to resume work up to and including the date of this order. Throughout this entire period, compensation has been paid at the rate of $9.80 per week.

It appearing that on June 18th, 1928, the respondent presented a petition to the workmen's compensation bureau contending that it had been prejudiced by the continued and obstinate refusal of the petitioner to subject himself to proffered medical and surgical treatment deemed necessary by the physician selected by the employer. This petition was supported by the affidavit of Dr. Cotton, a psychiatrist and neurologist, who is connected with the state institution for the insane. At the hearing of the said petition, it appeared that the respondent offered to place the petitioner in the St. Charles Private Hospital, at Trenton, under the care of Dr. Cotton, who, at that time, was of the opinion that the mental condition as manifested by the petitioner would be very much improved, if not entirely cleared up. In determination of the said petition, an order was issued by the workmen's compensation bureau directing the petitioner to submit himself to the course of treatment prescribed by Dr. Cotton at the above-mentioned hospital at the expense of the employer. The petitioner has refused to comply with the terms and provisions of the said order.

Whereas, on the 20th day of June, 1929, the petitioner, through his counsel, George W. V. Moy, brought this matter on for trial on the allegations as contained in the petition for compensation and the matters set up in the answer as filed by the respondent, and for the purpose of determining the degree of disability, the parties agreed that a consultation should take place between Drs. Hicks, Cotton, Cantini, Lufburrow and Dr. Dowd, who was appointed by the deputy commissioner. These doctors who had studied and examined the petitioner in accordance with the above-stated agreement held their conference in the court room, and after having

discussed the case, Dr. Dowd was sworn as a witness and testified that the petitioner is disabled to the extent of one hundred per cent. total permanent disability; that his condition is diagnosed as dementia praecox, but as a result of the conference and the interchange of the observations made by the various doctors, he is of the opinion that the respondent has been prejudiced to the extent of seventy-five per cent. by the refusal on the part of the petitioner to subject himself to a course of treatment as prescribed by Dr. Cotton. Dr. Dowd further testified that the period that would be re-. quired for the purpose of carrying out this course of treatment would be approximately one year.

Dr. Hicks was then sworn and testified that dementia praecox is never caused by a traumatism, but that it is a condition which was present in the petitioner long before the accident. He further testified that the petitioner at the time of his examination revealed diseased and unhealthy tonsils, decayed teeth, obstructed and congested nasal passages, and a clear and definite systemic toxic condition. He further testified that the effects of the accident have completely disappeared, and that if the petitioner would subject himself to the course of treatment as prescribed by Dr. Cotton, this toxic condition would be cleared up. At the present time Dr. Hicks estimates the petitioner's disability to be approximately one hundred per cent. permanent and total, but that the petitioner's continued refusal to accept the proffered medical attention has prejudiced the respondent to the extent of seventy-five per cent.

Dr. Cotton then testified and he also found that the petitioner was suffering from general systemic toxema. He also was of the opinion that trauma is never the cause of dementia praecox, and that in this particular case the disturbing factor which causes this petitioner such a disability is the toxic condition. In terms of percentage he estimates the petitioner is disabled to the extent of one hundred per cent. permanent and total, but that if he, the petitioner, would subject himself to a course of treatment under his care at the St. Charles Hospital in Trenton, for a period of approximately a year,

that this percentage would be reduced to twenty-five per cent. partial permanent, and it may even be entirely cleared up. The doctors Cantini and Lufburrow both agree with the findings of the above doctors with the exception that Dr. Cantini, who is a surgeon, believes that the improvement as a result of treatment would only be fifty per cent. and Dr. Lufburrow believes that it would only be twenty-five per cent.

From the consideration of the testimony as rendered by these doctors, I find that the weight of the evidence indicates that at the present time and as of June 18th, 1928, the petitioner was suffering one hundred per cent. total, and that the continued willful and obstinate refusal on the part of the petitioner to accept the proffered medical attention has prejudiced the respondent to the extent of seventy-five per cent.

\*          \*          \*          \*·          · \*          \*          \*

CHARLES E. CORBIN,
*Deputy Commissioner.*